# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

EVA RYALS,
                    Appellant,

v.

DEPARTMENT OF JUSTICE,
                    Agency.

DOCKET NUMBER
AT-0752-21-0308-I-2

DATE: April 29, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

J.R. Pritchett, McCammon, Idaho, for the appellant.

Jeanelle L. Graham, Esquire, Atlanta, Georgia, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which affirmed her removal.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to update the administrative judge's analysis of the agency's charge and the appellant's claims of discrimination and retaliation, we AFFIRM the initial decision.

## BACKGROUND

In 2014, the appellant sustained work-related injuries to her knee, finger, ribs, and chest while serving as a GS-11 Teacher in the agency's Bureau of Prisons (BOP) at the Federal Correctional Complex in Coleman, Florida. *Ryals v. Department of Justice*, MSPB Docket No. AT-0752-21-0308-I-1, Initial Appeal File (IAF), Tab 1 at 1, Tab 7 at 141-42. She never returned to work following her injuries and, in August 2020, the agency removed her for physical and medical inability to perform. IAF, Tab 6 at 16-18.

As background, BOP first attempted to remove the appellant in June 2016, in part for failing to report for a fitness for duty examination (FFD). IAF, Tab 8 at 126, 140. The appellant filed an equal employment opportunity (EEO) complaint challenging the 2016 removal. *Id.* at 126. In October 2017, the agency issued a final agency decision (FAD) finding that BOP should have rescheduled the appellant's FFD as a reasonable accommodation for her disability after she failed to attend the exam for medical reasons. *Id.* at 137-43. As a result, the agency ordered BOP to schedule an FFD examination to determine whether the appellant was able to perform the essential duties of her position and, if so, to

reinstate her. *Id.* at 142. The appellant attended an FFD in November 2017 and was found fit for duty; BOP ordered her to report to duty on February 2, 2018. IAF, Tab 6 at 127-30. However, the appellant did not return to duty and instead provided a note from her knee surgeon, stating that she was "attending physical therapy" and had "not been released from [his] care." IAF, Tab 6 at 123-26, Tab 16 at 5. The agency placed the appellant in a leave without pay status and she continued to receive Office of Workers' Compensation Programs (OWCP) benefits. IAF, Tab 6 at 126.

Seven months later, the agency issued a letter with eight specific medical questions for her medical provider (8-point letter), including her diagnosis and estimated date of recovery. IAF, Tab 9 at 4-6. Although she did not provide responses to the eight questions, the appellant submitted medical documents, including a second opinion medical examination report requested by OWCP, which stated that she had reached maximum medical improvement and was unable to perform the physical requirements of her position. *Id.* at 8, 20, 23-24. As a result, the agency found that the appellant was not medically qualified to perform her duties and invited her to complete a reasonable accommodation request form. IAF, Tab 6 at 84-87, 105-07. The appellant completed the form, requesting, as relevant here, reassignment. *Id.* at 86. The agency conducted a search for vacant funded positions to which she could be reassigned. *Id.* at 51-78, 80-81. However, the agency advised the appellant that it could not find any such positions. *Id.* at 44-45. The appellant submitted a response, which the agency interpreted as a request for reconsideration. *Id.* at 40-43. In reply, the agency reiterated that it had been unable to identify any vacant funded positions to which she could be reassigned. *Id.* at 38-39.

The agency removed the appellant in August 2020, for physical and medical inability to perform the essential duties of her position. *Id.* at 16-21. The appellant filed an EEO complaint challenging her 2020 removal, and the agency issued a FAD finding no discrimination. IAF, Tab 1 at 7-20.

The appellant then filed this appeal of her removal. *Id.* at 2. After holding a hearing, the administrative judge issued an initial decision affirming the removal. *Ryals v. Department of Justice*, MSPB Docket No. AT-0752-21-0308-I-2, Appeal File (I-2 AF), Tab 14, Initial Decision (ID) at 2, 28. He found that the agency proved its charge of medical inability to perform by preponderant evidence. ID at 7-15. He determined that the appellant failed to prove her affirmative defenses of failure to accommodate, disparate treatment based on disability, EEO retaliation, and harmful error. ID at 16-28. He concluded that removal was reasonable because the appellant could not meet the physical requirements of her position and there were no vacant funded positions to which she could be reassigned. ID at 28.

The appellant has filed a petition for review, and the agency has filed a response. Petition for Review (PFR) File, Tabs 1, 3. On review, the appellant disputes the administrative judge's finding that the agency proved she was medically unable to meet the physical requirements of her position and, therefore, the charge. PFR File, Tab 1 at 4-5, 7-8. She also reasserts that she is a qualified individual with a disability and that the agency denied her reasonable accommodation and retaliated against her for prior EEO activity. *Id.* at 9-14. She disputes the denial of her harmful error affirmative defense. *Id.* at 14-15.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>We modify the initial decision to find that the agency proved its charge under the standard articulated in *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶¶ 14-15.</u>

The administrative judge found that the agency proved that the appellant was medically unable to perform the physical requirements of her position. ID at 14. In reaching this conclusion, the administrative judge applied the standard for removals based on medical history, which the Board articulated in *Sanders v. Department of Homeland Security*, 122 M.S.P.R. 144, ¶ 11, *aff'd*, 625 F. App'x 549 (Fed. Cir. 2015), *overruled in part by Haas*, 2022 MSPB 36,

¶¶ 10-14. ID at 7, 15. Although we agree with the administrative judge's conclusion, we modify his reasoning.

After the administrative judge issued the initial decision in this matter, the Board decided *Haas*. In *Haas*, the Board clarified that the standard set forth in *Sanders* only applies to removals based solely on medical history. *Haas*, 2022 MSPB 36, ¶¶ 11-14. A removal is based solely on medical history if the only basis for concluding that the employee is medically unable to perform the core duties of her position is the fact that her medical records reflect that, at some time in the past, she was classified as having, was examined for, or was treated for the medical condition or impairment in question. *Id.*, ¶ 12. In contrast, when an agency removes an employee for a present medical inability to perform, it must prove either a nexus between her medical condition and observed deficiencies in her performance or conduct, or a high probability, given the nature of the work involved, that her condition may result in injury to herself or others. *Id.*, ¶¶ 14-15. In other words, the agency must establish that the appellant's medical condition prevents her from being able to safely and efficiently perform the core duties of her position. *Id.*, ¶ 15.

The agency removed the appellant due to physical limitations associated with her right knee, left wrist, and left shoulder. IAF, Tab 6 at 17-18, 27-28, 116-20. The appellant's medical evidence states that she had "permanent impairment in her right knee" and limited range of motion in her shoulder and wrist. IAF, Tab 7 at 93-94, 103. Further, according to both medical opinions obtained by the appellant and the OWCP second opinion physician, the appellant had reached "maximum medical improvement." IAF, Tab 6 at 26, 115, Tab 7 at 90, 107. When "a party is diagnosed with a medical condition that is by its nature 'permanent or progressive' in severity, it will be assumed to continue to exist after the date of diagnosis absent rebuttal evidence of record to the contrary." *Pyles v. Merit Systems Protection Board*, 45 F.3d 411, 415 (Fed. Cir. 1995). According to OWCP, maximum medical improvement "means that

[an impairment] is well-stabilized and unlikely to improve substantially with or without treatment." 20 C.F.R. § 30.911(a). The parties do not dispute that the appellant suffered from these conditions at the time of her removal. IAF, Tab 7 at 103-07; PFR File, Tab 1, Tab 3 at 10-11. The appellant did not provide any evidence or testimony below suggesting, and has not argued on review, that she has fully recovered. Therefore, we must consider whether the appellant's medical condition prevented her from being able to safely and efficiently perform the core duties of her position.[2] *See Haas*, 2022 MSPB 36, ¶ 20.

<u>The agency proved its charge of medical inability to perform.</u>

The Board has indicated that the core duties of a position are synonymous with the essential functions of a position under the Americans with Disabilities Act of 1990 (ADA), as amended, i.e., the fundamental job duties of the position, not including marginal functions. *Id.*, ¶ 21 (citing *Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 6 (2014); 29 C.F.R. § 1630.2(n)). Because the administrative judge adjudicated this appeal before *Haas* was issued, he did not make a finding regarding the appellant's core duties in connection with the charge. However, in adjudicating the appellant's affirmative defense that the agency failed to accommodate her disability, the administrative judge determined that the appellant's correctional officer duties were an essential function of her position. ID at 16-17. The parties do not dispute this finding on review. Further,

---

[2] To extent the appellant argues on review that the agency was required to prove that the appellant's return to work posed "a significant risk of substantial harm . . . that cannot be eliminated or reduced by reasonable accommodation," we are not persuaded. PFR File, Tab 1 at 5-6 (quoting 29 C.F.R. § 1630.2(r)). The Board considered the application of a similar standard in *Haas*. *Haas*, 2022 MSPB 36, ¶¶ 11, 14-16 (considering whether to apply 5 C.F.R. § 339.206, which provides that an employee may not be "disqualified" for a position subject to medical standards "solely on the basis of medical history" unless, as relevant here, "recurrence of the condition would pose a significant risk of substantial harm . . . that cannot be eliminated or reduced by reasonable accommodation or any other agency efforts to mitigate risk"). The Board rejected the application of the standard to a case in which the agency's charge of medical inability is based on an appellant's current medical condition or impairment. *Id.* The appellant does not provide a basis for revisiting that reasoning here. PFR File, Tab 1 at 5-6.

we discern no basis to disturb this finding, which is consistent with the record. IAF, Tab 7 at 5, Tab 9 at 79, Tab 15 at 4-5, Tab 16 at 4-5.

We turn now to whether the agency proved that the appellant's medical conditions prevent her from being able to safely and efficiently perform the core duties of her position. *See Haas*, 2022 MSPB 36, ¶ 15. Again, in the context of the appellant's reasonable accommodation claim, the administrative judge found that the appellant failed to prove that she could perform her correctional officer duties. ID at 17. However, because the agency bears the burden of proving its charge by preponderant evidence, we reexamine this issue here and conclude that the agency met its burden. *See Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 17.

Correctional officers like the appellant must be able "to recognize and respond effectively to emergencies." IAF, Tab 7 at 5. According to the agency, failure to do so "may jeopardize the security of the institution and the safety of staff and inmates." *Id*. To ensure that applicants and incumbents can respond to emergencies, BOP requires them to meet 14 physical standards. *Id*. at 5-7. These standards include "[w]alking for up to one hour," "[s]tanding for up to one hour," "[p]erform[ing] self-defense movements," "[r]unning an extended distance," "[d]ragging a body an extended distance," "[c]arrying a stretcher with one other person," "[c]limbing stairs," and "[l]ifting objects weighing 25 pounds." *Id*. The agency based its charge on the appellant's inability to meet these standards. IAF, Tab 6 at 17-18, 27-28, 114.

The administrative judge determined that the agency proved that the appellant was unable to perform the core duties because she was physically unable to lift 25 pounds, climb, drag a body an extended distance, and carry a stretcher with another person. ID at 14-15. He reasoned that the weight of the medical evidence showed that the appellant was limited to lifting no more than 10-20 pounds and should not climb, squat, or kneel. *Id*. In reaching this conclusion, the administrative judge considered the opinions of five different

medical doctors, as well as the conclusions of BOP's Chief of Occupational Safety and Health, who was also a physician. ID at 8-15.

In assessing the probative weight of a medical opinion, the administrative judge must consider whether the opinion was based on a medical examination, whether the opinion provides a reasoned explanation for its findings as distinct from mere conclusory assertions, the qualifications of the expert rendering the opinion, and the extent and duration of the expert's familiarity with the treatment of the appellant. *Bahm v. Department of the Air Force*, 38 M.S.P.R. 627, 632 (1988). The appellant argues that there was conflicting medical evidence and there should be a "separate and independent assessment of the 'inconsistent' medical documents" and an independent medical examination to determine whether she could perform the physical requirements. PFR File, Tab 1 at 10. In essence, the appellant suggests that another medical assessment is necessary. We are not persuaded.

Between 2017 and 2022, six doctors opined on the appellant's medical condition, and she has not offered evidence of a new opinion or explained why such an opinion would resolve any conflicts among the medical reports in the record. IAF, Tab 6 at 109, 113-15, 128-31, Tab 7 at 88-107, Tab 9 at 88-90. In reaching his conclusions, the administrative judge properly weighed the medical evidence. ID at 14-15. For example, he found most persuasive the opinion of the appellant's knee surgeon because he continued to treat her for both her shoulder and her knee, and his opinion and observations were largely consistent with four other doctors whose opinions the administrative judge credited. ID at 14. Comparatively, the administrative judge reasoned that two outlier opinions were less persuasive. ID at 14-15. He explained that the first, which stated that the appellant had reached maximum medical improvement while also temporarily reducing her medical restrictions, was inconsistent with the weight of the remaining medical evidence, was internally inconsistent, and did not provide a reasoned medical explanation for the appellant's improvement. *Id*.

The second, which stated that the appellant was fit for duty in 2017, was based on a single examination conducted nearly 3 years before the appellant's removal. ID at 15. In performing that assessment, the doctor noted that he was unable to evaluate all of the physical requirements. *Id.* The appellant argues that it is "still in dispute" whether she could perform the physical requirements of her position, relying on the two medical opinions that the administrative judge determined were entitled to little weight. PFR File, Tab 1 at 9-10; ID at 14-15. The appellant has not provided any specific reason as to why the administrative judge's weighing of the medical evidence was incorrect, and we discern none. Therefore, we affirm the administrative judge's finding that the appellant's condition prevented her from safely and efficiently performing the core duties of her position.[3]

Nevertheless, in determining whether the agency has met its burden, the Board will consider whether a reasonable accommodation, short of reassignment, exists that would enable the appellant to safely and efficiently perform her core duties. *Haas*, 2022 MSPB 36, ¶ 25. The administrative judge concluded that the appellant failed to identify any form of reasonable accommodation that would allow her to perform her correctional officer duties. ID at 17. Again, because he reached this finding in the context of the appellant's affirmative defense of failure to accommodate her disability, he placed the burden on the appellant. *Id.* Because the agency bears the burden of proving its charge, we will make findings on the fully developed record here. *See Haas*, 2022 MSPB 36, ¶ 20; *Thomas*, 2022 MSPB 35, ¶ 17.

An agency is not required to restructure a job to eliminate its essential functions, nor is it required to create a new position for the appellant to provide

---

[3] As indicated above, one of the physical standards of the appellant's position required lifting objects weighing 25 pounds. IAF, Tab 7 at 7. The administrative judge determined that the appellant could not lift over 20 pounds. ID at 14. In light of this finding, we need not reach the appellant's argument that the administrative judge erred in finding she was required to lift up to 65 pounds. PFR File, Tab 1 at 4-5.

reasonable accommodation. *Clemens*, 120 M.S.P.R. 616, ¶ 9; *Gonzalez-Acosta v. Department of Veterans Affairs*, 113 M.S.P.R. 277, ¶ 13 (2010) (citations omitted). The appellant alleged below, and again asserts on review, that the agency could reasonably accommodate her by allowing her to teach inmates by video conference or "by other means than physically being present within the facility." IAF, Tab 7 at 81; I-2 AF, Tab 8 at 5; PFR File, Tab 1 at 10-11. However, such an accommodation would make it impossible for her to perform her correctional responsibilities, which "precede all others required by [her] position." IAF, Tab 9 at 79; PFR File, Tab 1 at 10-11. As discussed above, "[a]ll positions located in correctional institutions are hazardous duty law enforcement officer positions, and require individuals to be physically able and medically qualified to perform correctional work safely and successfully." IAF, Tab 7 at 5. The appellant's proposed accommodation would therefore eliminate an essential function of her position. *See Gonzalez-Acosta*, 113 M.S.P.R. 277, ¶ 13. Thus, as modified above, we affirm the administrative judge's finding that the agency proved its charge that the appellant was physically and medically unable to perform the duties of her position.

<u>We affirm, as modified in part, the administrative judge's finding that the appellant failed to prove her discrimination and retaliation affirmative defenses.</u>

The administrative judge found that the appellant did not prove her affirmative defenses. The appellant's petition for review reraises her argument that the agency failed to engage in the interactive process for identifying a reasonable accommodation, discriminated against her on the basis of disability, and retaliated against her for engaging in protected EEO activity. PFR File, Tab 1 at 9-14. She also disputes the administrative judge's determination that she did not prove that the agency's decision was the result of harmful error. *Id.* at 14-15. We affirm the administrative judge's findings as to these affirmative defenses.

*The administrative judge correctly held that the appellant failed to establish her affirmative defense of disability discrimination.*

The administrative judge found that the appellant is not a qualified individual with a disability, and thus, is not entitled to reasonable accommodation. ID at 16-17. The appellant argues on review that the administrative judge did not resolve whether she is a qualified individual because there were disputes in the medical evidence. PFR File, Tab 1 at 9-10. We disagree.

The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act. *Haas*, 2022 MSPB 36, ¶ 28. The Rehabilitation Act incorporated the standards of the ADA. *Id.* Therefore, the Board applies those standards to determine if there has been a Rehabilitation Act violation. *Id.* Only a qualified individual with a disability is entitled to relief under the Rehabilitation Act for claims of either status-based discrimination or denial of reasonable accommodation. *See id.*, ¶¶ 28-29. A qualified individual with a disability is one who can perform the essential functions of her position or one that she desires with or without reasonable accommodation. 42 U.S.C. § 12111(8); *Haas*, 2022 MSPB 36, ¶ 28.

As discussed above, the administrative judge correctly found that the appellant was unable to perform the essential functions of her position with or without reasonable accommodation. ID at 14-17. He also observed that she did not challenge the agency's efforts to locate a vacant funded position to which she could be reassigned. ID at 17. The appellant does not argue on review that such a position exists. Therefore, we discern no basis to conclude that the agency's efforts were deficient. IAF, Tab 6 at 51-78.

The appellant argues on review, as she did in her closing argument, that the agency failed to accommodate her by failing to engage in the interactive process. I-2 AF, Tab 13 at 9-11; PFR File, Tab 1 at 10-11. Contrary to the appellant's

assertions, the administrative judge resolved the dispute in medical evidence in favor of the agency. ID at 14-15. Therefore, the administrative judge properly found that the appellant is not a qualified individual, and she is not entitled to relief under the Rehabilitation Act for a claim of denial of accommodation. ID at 17.

The appellant also contended that BOP subjected her to disparate treatment on the basis of her disability. IAF, Tab 19 at 1-3. The administrative judge found that the appellant was disabled and that her removal was based on medical restrictions resulting from that disability, but he found that the appellant failed to demonstrate that the agency's proffered reason for removal was pretextual. ID at 19-21. After the administrative judge issued the initial decision, we clarified the standards applied to status-based disability discrimination claims. Specifically, as we note above, we held that, as with a failure to accommodate claim, only an otherwise qualified individual with a disability is entitled to relief for a claim of status-based discrimination. *Haas*, 2022 MSPB 36, ¶¶ 28-29. As stated above, the appellant is not "qualified," and her disability discrimination claim fails on that threshold issue. *Id.* Accordingly, we modify the administrative judge's findings as to the appellant's status-based disability discrimination claim.

The administrative judge's improper analysis of the disability discrimination claim was harmless because he properly found that the appellant failed to prove she was a qualified individual with a disability. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision). Because we agree that she was not qualified, we need not address the appellant's argument that the agency treated her less favorably than other employees as to the 8-point letter. PFR File, Tab 1 at 11. Specifically, she claims that the agency failed to present evidence that it had accepted, as it did in her case, responses to 8-point letters

that came in the form of medical documentation, rather than specific answers to the questions posed. *Id.* We decline to reach this issue not only because the appellant failed to prove that she was "qualified" under the Rehabilitation Act, but also because she alleges disparate treatment on this basis for the first time on review without explaining why she could not assert this claim below. *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016) (stating that the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).

> *We modify the initial decision to find that the appellant failed to establish her affirmative defense of EEO retaliation under the standard articulated in Pridgen v. Office of Management and Budget, 2022 MSPB 31.*

The appellant alleged that her removal was in retaliation for her 2016 EEO complaint and the resulting FAD. I-2 AF, Tab 13 at 12-13. Both in his prehearing conference summary and in the initial decision, the administrative judge notified the parties of, and applied, the standard set forth in *Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986). IAF, Tab 19 at 8; ID at 22. The *Warren* standard does not apply to claims of reprisal for engaging in EEO activity; therefore, the use of this standard was in error. *See Pridgen*, 2022 MSPB 31, ¶ 32.

In the underlying EEO complaint, the appellant raised claims arising under both the Rehabilitation Act and Title VII. IAF, Tab 1 at 7-8. The Board recently clarified in *Pridgen*, 2022 MSPB 31, ¶¶ 43-47, that an appellant alleging retaliation for activity protected under the Rehabilitation Act must prove that her protected activity was a "but-for" cause of the agency's action. The Board also clarified that for claims of reprisal for engaging in activity protected by Title VII, an appellant must show that the prohibited consideration was a motivating factor in the action. *Id.*, ¶¶ 20-22, 30. "But-for" causation is a higher burden than "motivating factor" causation. *Id.* An appellant who fails to meet the motivating

factor standard necessarily fails to meet the more stringent "but-for" standard. *See id.* (concluding that, because an appellant did not show that his sex was a motivating factor in the agency's action, he necessarily failed to meet the more stringent "but-for" standard). Because the record is fully developed on the relevant issue, we modify the initial decision to find that the appellant failed to prove that her prior EEO activity was a motivating factor in her removal, without reaching the issue of whether the appellant proved it was a but-for cause.[4] *See Forte v. Department of the Navy*, 123 M.S.P.R. 124, ¶ 27 (2016) (applying the correct standard to an appellant's discrimination claim on review, rather than remanding, when the administrative judge applied an incorrect standard but the record was fully developed).

In reaching his conclusion, the administrative judge considered the appellant's "circumstantial evidence of retaliatory intent" and concluded that she did not establish that her removal was "because of" her EEO activity. ID at 22-25. The appellant argued below, and again asserts on review, that the deciding official minimized the extent of his knowledge of her protected activity during an EEO investigation and that an internal memorandum requesting the FFD unnecessarily referenced the FAD. I-2 AF Tab 13 at 12-13; PFR File, Tab 1 at 11-13. On review, she also challenges the administrative judge's credibility determinations regarding the testimony from the deciding official, the former Human Resources Manager (HRM), and the former Assistant Human Resources Manager (AHRM). PFR File, Tab 1 at 13-14.

---

[4] The parties do not challenge the administrative judge's reliance on the *Warren* standard on review. Further, the appellant was aware of, and addressed, the motivating factor standard during the proceedings below. Specifically, the agency advised the appellant of the burden of proving her prior EEO activity was a motivating factor in her removal in connection with the underlying EEO complaint. IAF, Tab 1 at 7, 16. Further, the appellant demonstrated her knowledge of that standard by asserting both in connection with that EEO complaint and in her closing argument in the instant appeal that her EEO activity was a motivating factor in her removal. IAF, Tab 8 at 94, 99; I-2 AF, Tab 12 at 12-13. Because the administrative judge's error was not prejudicial to the appellant's substantive rights, it does not provide a basis for reversing the initial decision. *See Panter*, 22 M.S.P.R. at 282.

The methods by which an appellant may prove a claim of discrimination under Title VII include the following: (1) direct evidence; (2) circumstantial evidence, which may include (a) evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn," also known as "convincing mosaic"; (b) comparator evidence, consisting of "evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic . . . on which an employer is forbidden to base a difference in treatment received systematically better treatment"; (c) evidence that the agency's stated reason for its action is "unworthy of belief, a mere pretext for discrimination" (i.e., the burden-shifting standard under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)); and (3) some combination of direct and indirect evidence. *Pridgen*, 2022 MSPB 31, ¶ 24 (citations omitted).

The prior EEO activity that served as the basis for the appellant's reprisal claim was the EEO claim that led to the October 2017 FAD. IAF, Tab 8 at 99; ID at 22. The administrative judge found that the deciding official's limited knowledge of the appellant's prior EEO activity was insufficient to establish nexus. ID at 23-25. The administrative judge did not limit the type of evidence the appellant could use to establish nexus and analyzed both direct and circumstantial evidence. ID at 22-25.

The day after the agency issued the FAD, the agency's Senior EEO Specialist sent to the deciding official and the HRM a copy of the October 2017 FAD,[5] along with a procedural summary and action items required for agency

---

[5] The administrative judge stated that the Senior EEO Specialist's email "contain[ed] little information about the underlying complaint beyond a brief summary of its procedural background" and that there was "no evidence that either [the deciding official, the [HRM], or the [AHRM] were notified of anything beyond what was in that summary." ID at 23 (citing IAF, Tab 18 at 131-32). Although the appellant did not directly challenge this description of the email, the record does not support the administrative judge's statement. The referenced email reflects that the FAD was attached, and the attachment line includes a file named "[Complaint Adjudication

compliance. IAF, Tab 18 at 131-32. The administrative judge explicitly credited the deciding official's testimony and corroborating evidence that he did not recall the email because of the passage of time, but that his focus would have been on the content of the request for compliance and seeing that it was properly routed to human resources to ensure compliance. ID at 23-25. We afford these explicit credibility-based factual findings deference. *See Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1373 (Fed. Cir. 2016); *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

In reaching his conclusions, the administrative judge did not explicitly consider whether any individual, motivated by the appellant's prior EEO activity, influenced the deciding official to remove the appellant. On review, the appellant argues that the HRM and AHRM, who had knowledge of the October 2017 FAD, harbored retaliatory animus. PFR File, Tab 1 at 11-14. The U.S. Supreme Court has adopted the term "cat's paw" to describe a case in which a particular management official, acting because of an improper animus, influences an agency official who is unaware of the improper animus when implementing a personnel action. *Staub v. Proctor Hospital*, 562 U.S. 411, 422 (2011). The administrative judge credited the HRM's testimony that she did not see the email discussing the appellant's EEO case because she was on extended leave for 4 months. ID at 25. He also credited the AHRM's denial of retaliatory animus and her testimony that "she was not aware of the details of the appellant's EEO activity other than [the appellant] was being brought back to work in February 2018 after a 'hearing' of some type.'" ID at 24. The Human Resources Specialist, who authored a memorandum to the Health and Safety Office requesting a second FFD, included a reference to the appellant's EEO complaint and FAD. IAF, Tab 9 at 193. The

---

Office] Decision.pdf." IAF, Tab 18 at 131. Nonetheless, for the reasons discussed below, we find that this mistake had no impact on the outcome of the initial decision. *Cf.* 5 C.F.R. § 1201.115(a)(1) (indicating that the Board may grant a petition for review based on an error of sufficient weight to warrant an outcome different from that of the initial decision). Therefore, it does not provide a basis for reversing the initial decision. *See Panter*, 22 M.S.P.R. at 282.

administrative judge credited her testimony that she included the reference "merely as background to [explain] . . . why a second fitness for duty determination was being requested. ID at 24-25.

We afford these explicit and implicit credibility-based factual findings deference. *See Purifoy*, 838 F.3d at 1373; *Haebe*, 288 F.3d at 1299. Moreover, the appellant has not provided any evidence or argument suggesting that any of these individuals influenced the deciding official's determination that removal was appropriate. Any causal link is further attenuated by the fact that the October 2017 FAD was issued nearly 3 years before her proposed removal and the removal decision in July and August 2020. IAF, Tab 6 at 17, 27, Tab 8 at 126; *see Pridgen*, 2022 MSPB 31, ¶¶ 24, 43, 48 (declining to find that the timing of an appellant's removal 4 years after her protected Rehabilitation Act activity was suspicious). Thus, the record does not support a cat's paw claim as to these human resources professionals. Accordingly, we affirm the administrative judge's findings regarding the appellant's EEO retaliation claim, as modified above.

## The administrative judge properly found that the appellant failed to establish her claim of harmful error.

The appellant reraises the claim, originally raised in her closing argument, that the agency committed harmful error by considering her response to the 8-point letter, which she states was not completed by a health care provider. I-2 AF, Tab 13 at 12; PFR File, Tab 1 at 14. The administrative judge found that the appellant failed to raise this issue prior to the prehearing conference and did not show good cause for her delay. ID at 26. Nonetheless, he considered the claim, reasoning that the agency did not violate any law, rule, or regulation by relying on the medical documentation that the appellant submitted in response to the 8-point letter. ID at 26-27. He also concluded that the appellant failed to show that the agency's error was harmful. ID at 26. We agree.

An agency's error is harmful only when the record shows that a procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Forte*, 123 M.S.P.R. 124, ¶ 19. Here, the error claimed is that a medical provider did not complete the 8-point letter. I-2 AF, Tab 13 at 12; PFR File, Tab 1 at 14. The appellant has not cited, nor are we aware of, a legal authority, rule, or policy setting forth a requirement that a medical provider complete the 8-point letter. The administrative judge credited the testimony from the agency's Chief of Occupational Safety and Health that she asks additional questions if the 8-point letter is not answered adequately, which was not necessary here. ID at 26-27. On review, the appellant still has not identified the requirement that she believes the agency violated, and concedes that she cannot "quantify" the harm resulting from any such error. PFR File, Tab 1 at 14. Thus, we discern no basis to disturb the administrative judge's finding that the appellant failed to establish this claim. In light of this determination, we decline to reach the appellant's argument that she demonstrated good cause for raising this claim for the first time in her closing argument. ID at 26; PFR File, Tab 1 at 14.

The administrative judge also rejected the appellant's argument that the October 2017 FAD required BOP to return her to a duty status regardless of whether she had medical restrictions. I-2 AF, Tab 13 at 5; ID at 27. He reasoned, in part, that the FAD did "not discuss a situation in which the appellant notifies the Bureau of additional medical restrictions after the examination." ID at 27. Further, he found that she failed to show that any error was harmful. ID at 27-28. On review, the appellant reiterates that she was entitled to reinstatement once she passed the FFD exam and that the administrative judge failed to consider that the letter from her knee surgeon did not identify medical restrictions.[6] PFR File,

---

[6] We note that although the appellant alleges that the agency committed harmful error when it did not reinstate her after she passed the FFD, as required by the FAD, whether the agency violated the FAD's terms may more appropriately be raised with the agency as a question of compliance. *See* 29 C.F.R. § 1614.504(a). However, we need not

Tab 1 at 14-15. The error claimed is that the agency failed to reinstate the appellant after she passed her FFD examination, which the FAD required. IAF, Tab 8 at 142; PFR File, Tab 1 at 14-15. Contrary to the appellant's assertion, the record reflects that the agency reinstated the appellant after she was found fit for duty. IAF, Tab 6 at 126. Thus, there was no error according to the terms of the FAD. IAF, Tab 8 at 142.

Although the agency reinstated her, the appellant informed the agency at the time she was to return to work that she had not been released from her doctor's care. IAF, Tab 6 at 126. She conceded below that she "did not physically return to duty, in light of [the doctor's] note." IAF, Tab 16 at 5. The appellant has claimed on review that her doctor's note should have been insufficient to place her off-duty. PFR File, Tab 1 at 14. However, she does not address evidence in the record that she claimed on February 5, 2018, that she had not been released to full duty by her doctor. IAF, Tab 6 at 123-26. Further, as discussed above, the appellant did not provide evidence or testimony below suggesting, and has not argued on review, that she fully recovered and is able to perform the essential duties of her previous position. IAF, Tab 8 at 142. Thus, we discern no basis to disturb the administrative judge's findings that the appellant failed to establish that the agency committed any error and, even assuming the agency did err, that she failed to prove that any error was harmful. *See Forte*, 123 M.S.P.R. 124, ¶ 9 ("Reversal of an action for harmful error is warranted where the procedural error likely had a harmful effect upon the outcome of the case before the agency.").

The appellant has not challenged the administrative judge's determination that her removal did not exceed the tolerable limits of reasonableness, and we

---

address this issue because we agree with the administrative judge that the appellant failed to prove harmful error.

decline to disturb that conclusion. ID at 28. Therefore, we affirm the initial decision as modified above.[7]

## NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

---

[7] The appellant requests that the Board remand this case to the Equal Employment Opportunity Commission (EEOC) for adjudication. PFR File, Tab 1 at 15-16. The appellant's appeal rights are discussed below. We are without authority to remand the case as the appellant has requested. *See generally Hess v. U.S. Postal Service*, 124 M.S.P.R. 40, ¶ 11 (2016) (discussing the interplay between the Board and the EEOC in mixed cases).

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you

receive this decision.  5 U.S.C.  § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations<br>
Equal Employment Opportunity Commission<br>
P.O. Box 77960<br>
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

---

[9]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:     _____

*Gina K. Grippando*
Gina K. Grippando
Clerk of the Board

Washington, D.C.